IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J.W.                              *

              Plaintiff           *

       vs.                        *    CIVIL ACTION NO. MJG-13-2386

CORPORAL CARRIER, et al.          *

              Defendants          *

*         *         *         *         *         *         *         *         *

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

     The Court has before it Defendants' Renewal of Motion for

Summary Judgment [Document 56] and the materials submitted

relating thereto.   The Court finds a hearing unnecessary.


I.   BACKGROUND

     The instant case pertains to an incident that occurred at

Arundel Middle School ("School") in Anne Arundel County,

Maryland ("AAC") on February 8, 2013.   Plaintiff J.W.[1] was a

student attending the School.   Defendant Corporal Jonathan

Carrier ("Corporal Carrier") was a police officer with the AAC

Police Department, serving as the School's Resource Officer.   On

the afternoon of February 8, 2013, J.W. acted in a manner that

justified Corporal Carrier placing J.W. in handcuffs and

transporting him to a hospital for an emergency psychiatric

_____

[1]   Plaintiff J.W., a minor child, has brought this lawsuit by
and through his father and next friend Eugene Wikle.

evaluation.   During the encounter, J.W. sustained an injury to his left wrist.

J.W. subsequently filed a Complaint against Corporal Carrier, AAC, the Anne Arundel County Board of Education ("BOE"), and three employees of the School - Ramone Jarvis, Darcel Parker, and Kyle McKnett.[2]   Defendants timely removed the case to this Court.

In the Second Amended Complaint[3] [Document 29], J.W. asserted claims in ten Counts:

Count I:          Assault

Count II:         Battery

Count III:        False Arrest

Count IV:         False Imprisonment

Count V:          Intentional Infliction of Emotional
                  Distress ("IIED")

Count VI:         Negligence

Count VII:        Excessive Use of Force
                  (42 U.S.C. §1983)

Count VIII:       Violation of Maryland Declaration of
                  Rights

---

[2]   J.W. also named the School and the AAC Police Department as Defendants.
[3]   J.W. filed an Amended Complaint [Document 3]. In response, Defendants filed their first Motion to Dismiss [Document 11]. The Court provided J.W. with the opportunity to file a Second Amended Complaint ("SAC") superseding the Amended Complaint and directed J.W. to "consider the filings of Defendants addressed to the Amended Complaint in deciding what to include in the [SAC]" and to "omit from the [SAC] claims that lack any reasonable basis in fact and law." [Document 24] at 2.

Count IX:         Respondeat Superior

Count X:          Americans with Disabilities Act
                  (42 U.S.C. § 12101)

Defendants filed a Motion to Dismiss Second Amended Complaint, or, in the Alternative, Motion for Summary Judgment [Document 31], seeking dismissal of all claims.  In his Response [Document 35], J.W. voluntarily dismissed certain claims.[4]

On June 25, 2014, the Court issued its Memorandum and Order Re: Motion to Dismiss, [Document 50], leaving pending the following claims based upon allegations that Corporal Carrier used excessive force after he placed J.W. in handcuffs[5]:

| COUNT | AGAINST DEFENDANT(S) |
|---|---|
| Count I - Assault | Carrier |
| Count II - Battery | Carrier |
| Count VII - 42 U.S.C. § 1983 | Carrier |
| Count VIII - Maryland Declaration of Rights | (1) Carrier (2) BOE (3) AAC |

Regarding, the claims based upon excessive force, the Court stated:

---

[4]     J.W. dismissed completely Counts III, IV, and X, and dismissed partially Count VII against BOE and AAC.  See [Document 35] at 2.

[5]     The Court dismissed completely Counts V, VI, and IX.  J.W. had asserted a respondeat superior claim against BOE and AAC for alleged violations of the Maryland Declaration of Rights by Corporal Carrier, asserted in Count VIII.  However, "there is no separate cause of action [in Maryland] for respondent superior." Stewart v. Bierman, 859 F. Supp. 2d 754, 768 & n.8 (D. Md. 2012).  Accordingly, the Court dismissed Count IX as a free standing claim, but considered Count VIII to include a claim of respondeat superior liability against BOE and AAC.

> It is doubtful that JW has pleaded a
> plausible excessive force claim. However, to
> avoid any doubt as to the lack of merit of
> J.W.'s claims, the Court finds it
> appropriate to convert the instant motion to
> one for summary judgment in regard to the
> constitutionally-based excessive force
> claims. By so doing, J.W. will be required
> to present evidence - including his own
> testimony - rather than mere sweeping
> allegations - to support his excessive force
> claims.

[Document 50] at 19.

The Court ordered that:

> The parties may engage in discovery and
> shall . . . present any evidence they wish
> considered - in addition to matters now of
> record - in regard to Defendants' request
> for summary judgment on all claims remaining
> in Counts I, II, VII, and VIII.

Id. at 25 (internal footnote omitted). Specifically, the Court

stated that "[t]he discovery shall include a deposition of J.W.,

so that the Court can be informed precisely and unambiguously

what J.W.'s testimony is regarding material facts that may be in

dispute." Id. at 25 n.17.

By the instant renewed Motion, Defendants Corporal Carrier,

BOE, and AAC seek summary judgment on all remaining claims

pursuant to Federal Rules of Civil Procedure 56.


II.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the

pleadings and supporting documents "show[] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement:  The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

Thus, in order "[t]o defeat a motion for summary judgment, the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her." Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).  However, "self-serving, conclusory, and uncorroborated statements are insufficient to create a genuine issue of material fact." Int'l Waste Indus. Corp. v. Cape Envtl. Mgmt., Inc., 988 F. Supp. 2d 542, 558 n.11 (D. Md. 2013); see also Wadley v. Park at Landmark, LP, 264 F. App'x 279, 281 (4th Cir. 2008).

When evaluating a motion for summary judgment, the Court must bear in mind that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III.  DISCUSSION

### A.  Factual Background[6]

On February 7, 2013, Corporal Carrier and a guidance counselor and psychologist at the School had a meeting regarding J.W. [Document 31-2] at 4.  Corporal Carrier had been called to J.W.'s classrooms several times over the previous weeks because J.W. had been making "concerning" statements to students and School staff.  Id.  Corporal Carrier was informed that J.W. was on medications "for his conditions," but that the School planned to seek additional psychological help during a meeting with J.W.'s parents scheduled for the following day – February 8, 2013.  Id. at 5.

---

[6]    The Factual Background as stated herein is based upon J.W.'s testimony at his deposition and does not refer to statements from or actions by J.W. that Corporal Carrier, Parker, and Jarvis referenced in their Affidavits or that were included in the AAC Police Department's incident report.

The next day - February 8, 2013 - at around 1:30 PM, Corporal Carrier was called to a classroom because J.W. was having an outburst.  [Document 31-2] at 5.  J.W. testified at his deposition[7] that he had an "episode" while going from his fifth period class to his sixth period class because students had been teasing him.  J.W. Dep. 21:11-20; [Document 31-2] at 5.

Jarvis, a Student Advocate at the School, met J.W. outside the fifth period class and escorted him to an empty classroom in an attempt to calm him down.  J.W. Dep. 21:21-22:12; Jarvis Aff. ¶¶ 3-4.  J.W. testified that he was very upset and that Jarvis was not able to calm him down.  J.W. Dep. 22:10-14.  Jarvis called Interim Assistant Principal Parker and Corporal Carrier to provide assistance.  Jarvis Aff. ¶ 5.  Parker and Corporal Carrier responded with McKnett, a School employee to whom J.W. had been sent on at least two previous occasions to calm down after having an outburst.  J.W. Dep. 24:1-24; Carrier Aff. ¶ 3.

J.W. testified that he remained upset while Jarvis, Parker, McKnett, and Corporal Carrier were in the classroom and that he lifted up a desk and tipped it over near Parker.  J.W. Dep. 25:1-26:5.  He also told the School employees that he was going to harm himself.  Id.

---

[7]   All references herein to "testimony" from J.W. pertain to testimony given at his deposition.

Corporal Carrier informed J.W. that he (Corporal Carrier) was going to place handcuffs on J.W., and J.W. was aware that Corporal Carrier intended to take him to the hospital.  <u>Id.</u> 28:3-11.  J.W. did not want to go to the hospital, and he testified that he pulled away from Corporal Carrier as Corporal Carrier tried to handcuff him.  <u>Id.</u> 28:15-29:3.  When Corporal Carrier handcuffed his right hand, J.W. grabbed a door handle with his left hand and tried to pull away.  <u>Id.</u> 29:5-7.  After Corporal Carrier handcuffed J.W.'s hands behind his back, J.W. was struggling and tried to pull his hands out of the handcuffs. <u>Id.</u> 32:10-15.

J.W. then kicked Corporal Carrier in the upper thigh.  <u>Id.</u> 29:15-30:8.  J.W. testified that he kicked Corporal Carrier because he "didn't want to be taken away to prison or wherever I thought I was going to go . . . like a juvenile detention center."  <u>Id.</u> 31:11-17.  According to J.W., after he kicked Corporal Carrier, "he [Corporal Carrier] went around behind me and lifted up on my [left] arm."  <u>Id.</u> 31:5-9.  J.W. testified that he "felt a lot of pain.  Like the worst pain in my life" in his left hand.  <u>Id.</u> 33:1-5.

Corporal Carrier escorted J.W. out of the classroom to a police car and transported him to Anne Arundel Medical Center for an Emergency Evaluation.  J.W. Dep. 34:9-35:15; [Document 31-2] at 5.  At the hospital, J.W. complained of pain in his

left wrist.  [Document 57] at 6.  His left wrist was put in a
splint.  Id. at 5.  Clinicians at Anne Arundel Medical Center
recommended in-patient psychiatric treatment for J.W., but
J.W.'s parents opted to take him home.  J.W. Dep. 39:6-14;
[Document 57] at 4, 8.

When asked at his deposition if he thought Corporal Carrier
was "being real rough with you or just trying to hold on to you
to keep you from getting away?", J.W. responded that he felt
Corporal Carrier was just trying to "[h]old on to me."  J.W.
Dep. 38:2-4.  Moreover J.W. testified that he was not prevented
from doing anything – e.g. playing baseball or other sports –
because of the previous injury to his wrist.  Id. 41:4-18.


    B.    Claims Based on Excessive Force

J.W. asserts that Corporal Carrier utilized excessive force
when he "lifted [J.W.]'s arm subsequent to placing [J.W.] in
handcuffs."  [Document 64-2] at 5.  The excessive force
allegation is the basis of all remaining claims – assault,
battery, 42 U.S.C. § 1983, and Maryland Declaration of Rights.

In Maryland, "[a] battery is the intentional, unpermitted
touching of the body of another that is harmful or offensive to
the person who was touched."  Griffin v. Clark, No. RWT 11-2461,
2012 WL 4341677, at *2 (D. Md. Sept. 20, 2012).  An assault is
defined as "the attempt to cause a harmful or offensive contact

with another or to cause an apprehension of such contact."
Wallace v. Poulos, 861 F. Supp. 2d 587, 596 n.9 (D. Md. 2012).
Law enforcement officers possess a privilege to commit a battery
in the course of a legally justified arrest.[8] See Hines v.
French, 852 A.2d 1047, 1055 (Md. App. 2004); French v. Hines,
957 A.2d 1000, 1037 (Md. App. 2008).  However, a law enforcement
officer's privilege to commit a battery in the course of a
legally justified arrest "extends only to the use of reasonable
force, not excessive force.  To the extent that the officer uses
excessive force in effectuating an arrest, the privilege is
lost."  French, 957 A.2d at 1037; see also Bixler v. Harris, No.
WDQ-12-1650, 2013 WL 2422892, *8 (D. Md. June 3, 2013).

"[A]n 'excessive force' claim against police officers under
42 U.S.C. § 1983 is to be judged under Fourth Amendment
jurisprudence . . . ."  Richardson v. McGriff, 762 A.2d 48, 56
(Md. 2000).  "The standards for analyzing claims of excessive
force are the same under Articles 24 and 26 of the Maryland
Constitution as that under the Fourth Amendment of the United
States Constitution."  Hines, 852 A.2d at 1069.

The excessive force inquiry "focuses on the objective
reasonableness of the officer's conduct."  Richardson, 762 A.2d
at 56.  "[T]he test of reasonableness 'is not capable of precise

---

[8]     In its Memorandum and Order Re: Motion to Dismiss, the
Court found that J.W. had, in effect, conceded there was a legal
justification for his being handcuffed.  [Document 50] at 22-23.

definition or mechanical application,' [so] its proper application 'requires careful attention to the facts and circumstances of each particular case.'"  Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).  The Supreme Court of the United States has stated that:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove" . . . violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.

Graham v. Connor, 490 U.S. 386, 396-97 (1989) (citations omitted).

J.W. concedes that Corporal Carrier was justified in placing handcuffs on him and in transporting him to the hospital. [Document 64-2] at 5.  But, he contends that "summary judgment is not proper" because "Corporal Carrier exerted a significant amount of force in lifting [J.W.]'s left arm, or arms, after [J.W.] was handcuffed." [Document 64-2] at 6. However, J.W. has not presented any evidence that Corporal Carrier used objectively unreasonable force in detaining him for

purposes of transporting him to the hospital for an emergency
psychiatric evaluation.

"The first step in assessing whether [Corporal Carrier]
violated [J.W.]'s Fourth Amendment right is to determine the
relevant facts." Henry v. Purnell, 501 F.3d 374, 379 (4th Cir.
2007).  At the summary judgment stage, "courts are required to
view the facts and draw reasonable inferences 'in the light most
favorable to the party opposing the [summary judgment] motion.'"
Scott v. Harris, 550 U.S. 372, 378 (2007) (alteration omitted)
(citation omitted).

During his deposition, J.W. testified that he was very
upset on the afternoon on February 8, 2013 and unable to calm
down.  He admitted to having flipped over a desk and stating
that he wanted to harm himself.  J.W. Dep. 2:1-26:8.  J.W. did
not want to go to a hospital and testified that he "tried to
pull . . . away" when Corporal Carrier attempted to handcuff
him.  Id. 28:5-8, 28:21-29:7.  J.W. also testified that after
being handcuffed, he continued to struggle, attempting to pull
his hands out of the handcuffs and kicking Corporal Carrier in
the upper thigh.  Id. 30:14-16, 32:10-15.  It was at this point,
that J.W. contends Corporal Carrier "went around behind me and
lifted up on my arm," causing injury to his (J.W.'s) left wrist.
Id. 31:6-9.  Despite testifying to having felt "the worst pain
in my life," J.W. stated that he thought Corporal Carrier was

just trying to "[h]old on to me," and was not trying to "be[]
real rough." Id. 33:1-5, 38:2-4.

As the United States Court of Appeals for the Fourth
Circuit has explained:

> [I]n Scott[ v. Harris, 550 U.S. 372 (2007),]
> the [Supreme] Court stated that at the
> summary judgment stage, once a court has
> determined the relevant set of facts and
> drawn all inferences in favor of the
> nonmoving party to the extent supportable by
> the record, the reasonableness of an
> officer's actions "is a pure question of
> law."

Henry, 501 F.3d at 383 n.12 (quoting Scott, 550 U.S. at
372, 381 n.8).

Contrary to J.W.'s contention, there is no genuine dispute
of material fact regarding the circumstances of Corporal Carrier
lifting up on J.W.'s left arm.  J.W.'s testimony from his
deposition corroborates the statements from Corporal Carrier,
Jarvis, and Parker that J.W. was very upset, threatening to
injure himself, and resisting all attempts to calm him down.

The Court finds that Corporal Carrier acted reasonably when
he lifted J.W.'s arm in an attempt to gain control of J.W. to
transport him to the hospital for an emergency psychiatric
evaluation.  Assuming - as J.W. suggests - that Corporal Carrier
could have gained control of J.W. by "grabb[ing] his shoulders
and escort[ing him] from behind," [Document 64-2] at 5 - which,
based on the circumstances, the Court finds unlikely -

"reasonableness is evaluated from the perspective of the officer on the scene, not through the more leisurely lens of hindsight." Abney v. Coe, 493 F.3d 412, 416 (4th Cir. 2007).  Moreover, the fact that an arguably less "forceful" alternative to gaining control of J.W. might have existed, does not render the force that Corporal Carrier used unreasonable.  Cf. United States v. Sharpe, 470 U.S. 675, 686-87 (1985).

Accordingly, remaining Defendants are entitled to summary judgment on all remaining claims.


IV.  CONCLUSION

For the foregoing reasons:

1.   Defendants' Renewal of Motion for Summary
     Judgment [Document 56] is GRANTED.

2.   Judgment shall be entered by separate Order.


SO ORDERED, on Monday, May 4, 2015.


_____/s/_____
         Marvin J. Garbis
     United States District Judge